IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
July 11, 2017 Session

## STATE OF TENNESSEE v. RICHARD CRAWFORD

**Appeal from the Criminal Court for Shelby County**
No. 11-02621          James C. Beasley, Jr., Judge

_____

### No. W2016-01230-CCA-R3-CD
_____

The Defendant, Richard Crawford, was convicted by a Shelby County jury of especially aggravated robbery, attempted especially aggravated kidnapping, attempted second degree murder, and employing a firearm during the attempted commission of a dangerous felony. On appeal, the Defendant argues that the trial court erred by: (1) determining that alleged prior bad acts of the victim and another witness were inadmissible for impeachment purposes; and (2) preventing the Defendant from subpoenaing the victim to testify a second time about additional prior inconsistent statements. Following our review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and D. KELLY THOMAS, JR., JJ., joined.

Seth M. Seagraves and Michael R. Working, Memphis, Tennessee, for the appellant, Richard Crawford.

Herbert H. Slatery III, Attorney General and Reporter; Andrew C. Coulam, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Pam Stark, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

On April 21, 2011, a Shelby County Grand Jury indicted the Defendant for one count of especially aggravated robbery, two counts of attempted especially aggravated kidnapping, one count of attempted second degree murder, and one count of employing a firearm during the attempted commission of a dangerous felony. The offenses occurred in December 2009 when the victim, Mike Murfik, was attacked at his home.

The Defendant filed several pretrial motions, including a motion pursuant to Tennessee Rule of Evidence 608(b) requesting the admission of certain prior bad acts of Murfik. In his motion, the Defendant argued that Murfik and his wife, Maria Lopez, owned a night club called "Club Visions" where illegal activity had taken place, including the bribery of three former police officers by Murfik and his brother. The Defendant claimed that this information was "highly probative" of Murfik's truthfulness.

At an August 21, 2013 hearing on the motion, the Defendant questioned Murfik and Lopez about their participation in the bribes and to determine who owned Club Visions. Murfik testified that he owned the property that Club Visions was located on and that Lopez owned and managed the business. Murfik acknowledged that he had seen police officers receive payments and bribes from someone at Club Visions but denied that he or Lopez paid any of the bribes. Lopez testified similarly and confirmed that she never bribed a police officer. After this testimony, the trial court denied the Defendant's motion because there was no basis to impeach Murfik's or Lopez's credibility since they had denied any responsibility or involvement with the alleged bad acts, and there was no proof presented otherwise.

The case proceeded to trial on August 27, 2013, and resulted in a mistrial. On September 18, 2014, the Defendant, through new counsel, filed a motion requesting the trial court to reconsider its ruling and to allow the Defendant to again question Murfik and Lopez about the bribes and their ownership of Club Visions. In his motion, the Defendant also requested the admission of "extrinsic evidence through both testimony and legal documentation created by the State proving the perjury and ownership interest of the victims in Club Visions." The trial court again denied the motion by written order, noting that it had previously heard testimony on the issue and that it "did not find by clear and convincing evidence that the victim had committed a crime, a wrong, or a bad act." The court also found that the danger of unfair prejudice outweighed any probative value. The following evidence, as relevant to this appeal, was presented at the Defendant's second trial.

**Trial.** Mike Murfik testified that he lived at 4389 Whispering Bend in Memphis and that he was working on the evening of December 7, 2009. Murfik recalled leaving work around 10:00 p.m. and calling his wife before he arrived home. Murfik explained that he always called his wife on his way home because he had been robbed in his driveway before and so his wife "would have the gun ready waiting for [him] to get home . . . [i]n the top window . . . upstairs." After Murfik parked and exited his car, he saw "one person . . . running towards [him] with a gun" and another person coming towards him "from right behind [his] garage." Murfik testified that the first person demanded Murfik's car keys and told the second person to "get the b**** in the car" and "shoot [Murfik]." Murfik said he "let go of the keys" and wrestled with the first attacker for

control of the gun. While he was wrestling for the gun, Murfik testified that he heard gunshots and saw his wife shooting. Murfik said that his wife shot the first attacker who "fell down" and then "jumped up and ran."

Murfik testified that he was shot in the leg and that he did not return to work for "[a]bout six months" due to his leg injury. While he was in the hospital, Murfik identified the Defendant as the first attacker in a photographic lineup. Murfik said that he could identify the Defendant as the first attacker because his "hoodie fell off his head" and because there were street lights and motion lights near his house. Murfik also identified the Defendant at trial.

On cross-examination, Murfik acknowledged that he described the Defendant's gun as a silver semi-automatic pistol on direct examination and that he had described the gun as a revolver at the first trial. He also agreed that he gave different estimates at the first and second trials of how many gunshots he heard. On redirect, Murfik further admitted that he told officers the day after the attempted robbery that he handed the Defendant his car keys instead of dropping the keys, as he testified on direct examination. Murfik agreed that his prior testimony about the car keys, given about twelve hours after the incident, would be more accurate than his trial testimony. Defense counsel chose not to recross Murfik after the State's redirect examination.

Maria Lopez, Murfik's wife, largely corroborated her husband's testimony. Lopez testified that Murfik called her on his way home from work and that she saw two men with guns ordering Murfik to get into his car. Lopez then "ran upstairs and opened the window and looked, waited for the opportunity to be able to defend [Murfik] from upstairs . . . because [the two men] were both kind of wrestling with [Murfik] in the front of the yard." When one of the attackers stepped away, Lopez shot him, and he fell to the ground. The other attacker then ran away. Lopez testified that she heard "maybe twenty or more" shots and that she fired "two or three" shots before her gun jammed. Lopez informed the officers when they arrived that she had shot one of the attackers. Lopez testified that Murfik went back to work after "maybe a week" but that "he needed assistance . . . because he couldn't stand for long periods of time." Lopez identified the Defendant in a photographic lineup and at trial as the attacker that she shot.

After Lopez's testimony concluded and the jury was dismissed for the day, the State informed the trial court that the Defendant had served Murfik with a subpoena in court immediately after he testified in order to recall and question him about additional prior inconsistent statements. Defense counsel stated that he "neglect[ed] to ask Mr. Murfik some questions about his prior testimony at the prior trial" and that "Mr. Murfik hasn't had a chance to review his testimony which would of [sic] taken a much more substantial time." Additionally, defense counsel said that Murfik's prior sworn testimony

was substantive evidence that could be admitted as an exhibit and that he should be "entitled to use it in [his] case-in-chief." The trial court took the matter under advisement, and the Defendant did not raise the issue again until the State concluded its proof. At that time, defense counsel informed the trial court that, instead of recalling Murfik, the Defendant wanted to "admit as a self-authenticating non-hearsay exhibit his prior testimony from the first trial on August 27, 2013." The trial court denied the Defendant's request and concluded that it was improper "to introduce his prior testimony . . . simply for the purpose of impeachment after the witness has already testified." The trial court also noted that the Defendant had already presented other prior inconsistent statements to Murfik on cross-examination. The court offered the Defendant an opportunity to tender the impeaching evidence to preserve the issue for appeal; however, the Defendant did not tender or offer any proof.

Quentin Hogue, an officer with the Memphis Police Department, testified that on December 7, 2009 around 11 p.m. he responded to a call from Delta Medical Center that a patient had arrived with a gunshot wound. Officer Hogue met with the patient, who was later identified as the Defendant. The Defendant told Officer Hogue that he was the victim of a shooting that occurred at Delta Road when he was visiting his girlfriend. The Defendant did not give a last name, address, or any other identifying information about his girlfriend or his friend "Zoe," who he said drove him to see his girlfriend, and Officer Hogue was not able to identify either person. Officer Hogue also confirmed that there was no other report of shots fired in Memphis or Shelby County that night and said that the Defendant's story "didn't add up."

Monica Humphrey, the Defendant's wife, testified that the Defendant left their house around 8:00 p.m. on December 7, 2009, and did not return. She learned later that night that the Defendant was at Delta Medical Center with a gunshot wound. Humphrey said that she did not know anyone named "Zoe" and that the Defendant told her he was shot while "messing around with someone's wife[ ] [or] girlfriend" but did not reveal the wife or girlfriend's name.

Shelby County Sergeant Jason Valentine testified that he participated in the investigation of the attempted robbery and shooting at Whispering Bend and also interviewed the Defendant at Delta Medical Center. The Defendant told Sergeant Valentine a similar story about his friend "Zoe" driving him to see a female friend named "Meka." The Defendant claimed that he was shot shortly after exiting the car and that "Zoe" took him to the hospital. Sergeant Valentine was also never able to identify "Zoe" or "Meka." Sergeant Valentine also testified that there were several other hospitals closer to the neighborhood where the Defendant claimed he was shot and that Delta Medical Center was only ten minutes from Whispering Bend.

The Defendant presented testimony from Trini Dean, a Sergeant with the Shelby County Sherriff's Office, who testified that he was the lead detective investigating the attempted robbery at Whispering Bend. On the night of the incident, Sergeant Dean interviewed Murfik, who said he was approached by two men at his house and that he struggled with one of the men for his gun. On cross-examination, Sergeant Dean recalled that Murfik said the two men shot at him before his wife started shooting. Murfik also told Sergeant Dean that he gave the two men his keys after the struggle. In a photograph of Murfik's house, Sergeant Dean identified broken glass and a bullet hole in a window on the first floor, which he noted could not have been caused by Lopez, who was shooting from a second floor window. Sergeant Dean also identified the Defendant in a surveillance video from Delta Medical Center.

At the conclusion of the proof, the jury found the Defendant guilty as charged. At the April 25, 2016 sentencing hearing, the Defendant testified and made an allocution. The Defendant told the trial court that he was "guilty of participating in this crime." The Defendant also stated that he "fired the shot [at Murfik] and it was in a lower leg, a warning shot." However, he also maintained that he was not the suspect that struggled with Murfik. The trial court merged the Defendant's two attempted especially aggravated kidnapping convictions and imposed an effective sentence of thirty-seven years' confinement.

The Defendant filed a motion for new trial on April 29, 2016. A hearing on the motion took place on May 23, 2016, and the trial court issued a written order denying relief the same day. After the denial of his motion for new trial, the Defendant filed a timely notice of appeal on June 3, 2016.

## ANALYSIS

On appeal, the Defendant argues that the trial court erred by: (1) determining that alleged prior bad acts of Murfik and Lopez were inadmissible for impeachment purposes; and (2) preventing the Defendant from subpoenaing the victim to testify a second time about additional prior inconsistent statements. The State responds that the Defendant's issues are waived and that, waiver notwithstanding, the Defendant is not entitled to relief.

**I. Impeachment of Murfik and Lopez.** First, the Defendant contends that the trial court erred by refusing to allow the Defendant to impeach Murfik and Lopez with "evidence of their involvement in bribing local police" pursuant to Tennessee Rule of Evidence 608(b). He also claims that the trial court erred by failing to conduct a jury-out hearing pursuant to Rule 608(b), for not allowing trial counsel to make an offer of proof on the issue until the motion for new trial, and for basing the court's ruling on Tennessee Rule of Evidence 404(b), not Rule 608(b). The State responds that the Defendant's

arguments regarding the impeachment of Murfik and Lopez are waived because the motion for new trial was based on Rule 404(b), not Rule 608(b), and because the Defendant has provided an inadequate record on appeal. We agree with the State.

Before the Defendant's first trial, the Defendant filed a "motion for an out of court hearing pursuant to Tennessee Rules of Evidence Section 608(b)" to "determine the admissibility of prior bad acts" of Murfik. Subsequently, the Defendant's original counsel withdrew and his new counsel later filed a motion to reconsider the 608(b) motion but titled his motion as "relating to Tennessee Rule of Evidence 404(b)" as well as "Rules 608 and 613." The trial court's order denying the motion to reconsider solely referenced Rule 404(b), and it is not clear from the record provided on appeal whether a hearing was held on the motion.[1] At trial, the Defendant renewed his objection to the trial court's prior ruling; however, the Defendant only relied on Rule 404(b) and based his objection on entirely different factual grounds.[2] In his motion for new trial, the Defendant solely relied on Rule 404(b) and made no argument pursuant to Rules 608(b) or 613. Likewise, at the motion for new trial hearing, the Defendant continued to reference only Rule 404(b) and, thus, the trial court denied the motion for new trial solely based on Rule 404(b).

Tennessee Rule of Appellate Procedure 3(e) states that "no issue presented for review shall be predicated upon error in the admission or exclusion of evidence . . . or other ground upon which a new trial is sought, unless the same was specifically stated in a motion for new trial; otherwise such issues will be treated as waived." The rule requires that issues presented in the motion for new trial be "specified with reasonable certainty so as to enable appellate courts to ascertain whether the issue was first presented for correction in the trial court." Waters v. Coker, 229 S.W.3d 682, 689 (Tenn. 2007) (citing State v. Gauldin, 737 S.W.2d 795, 798 (Tenn. Crim. App. 1987)). "[A]ppellate courts should review a motion for new trial in the light most likely to preserve the issue alleged, although courts cannot create an error where none has been legitimately preserved." Fahey v. Eldridge, 46 S.W.3d 138, 146 (Tenn. 2001). The Tennessee Supreme Court explained:

---

[1] The trial court's order denying the Defendant's motion to reconsider states that "[t]his matter came on to be heard on a request by the [D]efendant to question the victim in this case about a prior incident." However, it is unclear whether the court is referring to the original Rule 608(b) hearing on August 21, 2013, or to an additional hearing that is not documented in the record provided on appeal.

[2] The Defendant "renew[ed] [his] request for impeaching conduct" of Murfik to admit a videotape allegedly showing Murfik standing at work after he was shot. The video was meant to impeach Murfik's testimony that he could not stand for six months after he was shot. The trial court allowed defense counsel to question Murfik about the extent of his injury and when he returned to work, however, defense counsel conceded that he was "going to stay away from it" and did not question Murfik on the issue.

Before an issue can be properly preserved in a motion for new trial under Rule 3(e), a well-pleaded motion should (1) allege a sufficient factual basis for the error by setting forth the specific circumstances giving rise to the alleged error; and (2) allege a sufficient legal basis for the error by identifying the trial court's claimed legal basis for its actions and some articulation of why the court erred in taking such actions.

Id.

We conclude that the Defendant waived this issue because it was not adequately preserved in his motion for new trial. In the motion, he claimed that "[t]he [t]rial [c]ourt denied the defense impeachment of victims Mike Murfik and Maria Lopez pursuant to Rule 404(b)" and that "[t]he [t]rial [c]ourt denied the defense ability to impeach the victims Mike Murfik and Maria Lopez pursuant to Rule 404(b), and in relation to their truthfulness." The Defendant does not mention Rule 608 anywhere in his motion for new trial but contends on appeal that "[t]he term[ ] 'denied the ability to impeach' clearly refers to the [t]rial [c]ourt's refusal to hear motions regarding Rules 608 and 613." We disagree that this phrase "clearly" implies the legal grounds on which the Defendant attempts to rely, particularly considering that, at the motion for new trial hearing, the Defendant presented his argument to the trial court solely on Rule 404(b) grounds. Additionally, the Defendant's pretrial objections to the exclusion of the impeachment evidence on Rule 608 grounds do not obviate Tennessee Rule of Appellate Procedure 3(e)'s requirement that grounds be "specifically stated" in a motion for new trial. To the extent the Defendant attempts to argue different grounds based on the same facts, the issue is waived.[3] See Tenn. R. App. P. 3(e).

Waiver notwithstanding, although the Defendant claims that "the [trial] court refused to conduct a hearing" pursuant to Rule 608(b), the record clearly shows that the trial court held an evidentiary hearing on the Defendant's original Rule 608 motion. The record does not show, and the Defendant provides no proof, that he requested an additional hearing on his motion to reconsider.

The Defendant also falsely asserts that the trial court "would not allow subsequent trial counsel to offer any proof on the [Rule 608] issue until the [m]otion for [n]ew trial." The Defendant argues that he wanted to present "different evidence from the evidence introduced by prior counsel." However, the record shows that the trial court explicitly

---

[3] The Defendant also argues in the conclusion section of his brief that the trial court's denial of the impeachment evidence violates the confrontation clause of the Sixth Amendment. The Defendant did not articulate this argument elsewhere in his brief or include the issue in his motion for new trial or in the statement of the issues in his appellate brief. Accordingly, this argument is also waived. See Tenn. R. App. P. 3(e).

offered the Defendant an opportunity to tender the alleged new impeachment evidence at trial and to mark it for the record in order to preserve the issue for appeal. The record further shows that the Defendant did not take advantage of the court's offer and did not introduce the alleged new proof.

We also disagree that the trial court erred by only referencing Rule 404(b) in its written order denying the Defendant's motion to reconsider. The Defendant's motion to reconsider was based, in part, on Rule 404(b), and there is no indication that the Defendant requested clarification on the trial court's ruling. The Defendant is not entitled to relief on this issue.

**II. Subpoena of Murfik.** Next, the Defendant argues that the trial court erred by refusing to allow him to subpoena Murfik and by "granting the State's oral request to quash the subpoena stating that the Tennessee Rules of Evidence do not allow a party to call a witness simply to impeach them." Contrary to the Defendant's argument, the record shows that the trial court never quashed the Defendant's subpoena or refused the Defendant's request to subpoena or recall Murfik. In fact, the court ruled that Murfik was "obviously subject to a subpoena" and that the court "d[i]dn't think it's improper to subpoena witnesses under those circumstances and then frankly in that manner." However, as the State points out, the Defendant abandoned his request to recall Murfik at trial and instead argued that, "rather than even delve into the mess of whether the defense should be entitled to recall Mr. Murfik, I think the defense should be entitled to admit as a self-authenticating non-hearsay exhibit his prior testimony from the first trial on August 27, 2013."[4] The Defendant fails to advance any additional argument in his brief in support of this issue. Accordingly, he is not entitled to relief.

### CONCLUSION

Upon review of the record and applicable law, we affirm the judgments of the Shelby County Criminal Court.

 

 

 

                                                           _____
CAMILLE R. McMULLEN, JUDGE

---

[4] Although the Defendant references Murfik's testimony from the first trial in his brief, the transcript is not included anywhere in the record provided on appeal.